918 F.2d 739
 Steve J. LAYTON, Appellant,
v.
STATE OF SOUTH DAKOTA; Herman Solem, Warden, South Dakota
State Penitentiary; Roger Tellinghuisen, Attorney
General of the State of South Dakota, Appellees.
 No. 89-5318-SD.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1990.
Decided Nov. 7, 1990.
 
 James L. Hoy, Sioux Falls, S.D., for appellant.
 Craig M. Eichstadt, Asst. Atty. Gen., Pierre, S.D., for appellees.
 Before McMILLIAN and ARNOLD, Circuit Judges, and FRIEDMAN,* Senior Circuit Judge.
 FRIEDMAN, Senior Circuit Judge.
 
 
 1
 This is an appeal from the denial by the United States District Court for the District of South Dakota of the appellant Layton's petition for a writ of habeas corpus challenging his conviction in a South Dakota State court of aggravated assault against two prison guards. He contends that his State conviction involved four violations of his constitutional rights. We reject these claims and affirm the denial of habeas.
 
 I.
 
 2
 In a jury trial in a South Dakota State court, Layton was convicted of two counts of aggravated assault against two unarmed guards at the South Dakota State penitentiary, where he was an inmate. The assaults occurred during a 1981 riot at the penitentiary. Six inmates were indicted. Only Layton and codefendant Davis went to trial; the four other defendants pleaded guilty.
 
 
 3
 Layton was given consecutive 30-year sentences on each of the two counts. In computing the sentence, the trial court first applied the South Dakota habitual offender statute, S.D.C.L. 22-7-7, which increased the maximum sentence on each count to 15 years. The court then applied the South Dakota doubling statute, S.D.C.L. 22-6-5.1, which permits doubling of the sentence if the defendant was a prisoner when he committed the crime.
 
 
 4
 The Supreme Court of South Dakota affirmed. State v. Layton, 337 N.W.2d 809 (S.D.1983). In a lengthy opinion the court considered and rejected the six grounds upon which Layton challenged his conviction. Layton then filed a petition for habeas corpus in the South Dakota State court. After a hearing, that court denied his petition. The South Dakota Supreme Court denied his motion for a certificate of probable cause to appeal that denial.
 
 
 5
 Following the State court proceedings, Layton filed a petition for habeas corpus in the United States District Court for the District of South Dakota, pursuant to 28 U.S.C. Sec. 2254. In his amended petition, Layton raised eleven grounds for relief. In a detailed opinion, the court** rejected all these contentions and denied the writ. Layton v. State, No. 88-4016, slip op. (D.S.D. May 12, 1989).
 
 
 6
 In his appeal to this court, Layton argues only four of the points he asserted in the district court.
 
 II.
 
 7
 Layton first argues that the trial court denied his right of confrontation under the sixth amendment by prohibiting him from using the juvenile record of a State witness, his co-defendant Franka, in cross-examining Franka.
 
 
 8
 The district court fully considered and rejected this argument:
 
 
 9
 After reviewing the transcript it is the Court's view that petitioner's right to confrontation was not violated by the limitations placed on the cross-examination of Franka. Franka's juvenile record was testified to on direct examination. Mr. Franka testified that he had two felony convictions as an adult and other felony convictions as a juvenile....
 
 
 10
 Franka testified that the juvenile record included felonies. Franka's credibility was sufficiently destroyed by the cross-examination that occurred.
 
 
 11
 Layton v. State, No. 88-4016, slip op. at 13-15 (D.S.D. May 12, 1989) (citations omitted).
 
 
 12
 Although the Confrontation Clause guarantees the right of a criminal defendant to conduct cross-examination, Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987), limitations on cross-examination have constitutional dimensions only where "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had respondent's counsel been permitted to pursue his proposed line of cross-examination.... The availability of other opportunities to elicit the same information on cross-examination is significant in determining whether a defendant's constitutional rights have been violated." United States v. Klauer, 856 F.2d 1147, 1149 (8th Cir.1988) (citing Delaware v. Van Arsdall, 475 U.S. 673 at 680, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)).
 
 
 13
 The record shows that the jury was made fully aware of Franka's arrest record, as both an adult and a juvenile, as a result of Franka's extensive cross-examination. We agree with the district court that "no reasonable jury could have received a significantly different impression of Mr. Franka's credibility had he been cross-examined about the specifics of his juvenile record." Layton v. State, No. 88-4016, slip op. at 14 (D.S.D. May 12, 1989).
 
 III.
 
 14
 Layton next claims that he was denied due process when the trial court refused his request to discover potentially exculpatory material contained in inmate statements given to the State during pretrial investigation. The motion for discovery requested "[a]ny and all statements, written, oral, taped, summarized or otherwise taken from any witnesses including inmates, concerning the crimes alleged herein."
 
 
 15
 After an in-camera review of the statements, the trial court denied discovery under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which requires the prosecution to disclose to a defendant exculpatory material the prosecutor has. The trial court sealed the statements for the inmate witness' protection. The South Dakota Supreme Court, after also reviewing the sealed statements, agreed with the trial court. 337 N.W.2d at 814.
 
 
 16
 At the federal habeas proceeding, the district court made its own in-camera examination of the statements and concluded that the statements were not discoverable under Brady. Layton v. State, No. 88-4016, slip op. at 22 (D.S.D. May 12, 1989).
 
 
 17
 This court has reviewed, in-camera, the inmate statements. We agree with the district court that they contain no Brady material.
 
 IV.
 
 18
 Layton next argues that the trial court's application of the doubling statute and the habitual offender statute to produce two consecutive 30-year sentences, (A) constituted cruel and unusual punishment under the eighth and fourteenth amendments, (B) subjected him to double jeopardy under the fifth and fourteenth amendments, and (C) violated his due process rights guaranteed by the fifth and fourteenth amendments.
 
 
 19
 A. Layton makes two arguments why the sentence constituted cruel and unusual punishment. He contends that the trial court improperly invoked the habitual offender statute because under that statute the prior offense for which he was then serving his sentence could not be included. The South Dakota Supreme Court rejected Layton's interpretation of the State statute, 337 N.W.2d at 815-16, and we cannot second-guess that court's construction of State law. Kifer v. Liberty Mut. Ins. Co., 777 F.2d 1325, 1329 (8th Cir.1985).
 
 
 20
 Layton further argues that by applying both sentencing statutes, and when compared to the sentences imposed upon the other defendants, the trial court imposed an excessive and grossly disproportionate sentence. In Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 3010, 77 L.Ed.2d 637 (1983), the Supreme Court stated that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."
 
 
 21
 The district court carefully considered these factors. Concerning the gravity of the offense, the court noted:
 
 
 22
 Petitioner was convicted on two counts of aggravated assault. One count stemmed from petitioner's attempt to strike guard Ellis with his fist. The other stemmed from petitioner's repeated stabbing of guard Laachmann in the back. Petitioner at the time of the crimes was a prisoner serving a sentence for First Degree Burglary. He also had previously been convicted on the offense of First Degree Robbery. Petitioner's conduct, attempting to strike Ellis and stabbing Laachmann, are grave offenses. The gravity of the offenses is heightened by the fact that the conduct occurred in the state penitentiary and the victims, the guards, were unarmed.
 
 
 23
 Layton v. State, No. 88-4016, slip op. at 9 (D.S.D. May 12, 1989).
 
 
 24
 With respect to the sentences Layton's co-defendants (other than Davis) received, the court noted that all of those defendants had pleaded guilty to various offenses, and that they received total sentences of 10, 8, 8, and 2 years. Layton presented no evidence of the sentences imposed for the same offense in other jurisdictions.
 
 
 25
 Considering all the circumstances, including the other defendants' pleas of guilty and the fact that none of them repeatedly stabbed a guard, we agree with the district court's conclusion that although Layton's sentence was more severe than those imposed on the co-defendants, it was not "so greatly disproportionate that it violates the Eighth Amendment proscription against cruel and unusual punishment." Layton v. State, No. 88-4016, slip op. at 11 (D.S.D. May 12, 1989).
 
 
 26
 B. Layton next argues that the double enhancement of his sentence through the habitual offender statute and the doubling statute subjected him to double jeopardy. Although Layton recognizes that habitual offender criminal statutes have been upheld against double jeopardy challenges (see Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); Carlesi v. New York, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914)), he argues that the application of both statutes was fundamentally unfair and violated the constitutional prohibition against double jeopardy.
 
 
 27
 In rejecting this claim, the district court relied on McDonald v. Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901), which upheld a habitual offender criminal statute against a claim of double jeopardy, reasoning that "[t]he punishment is for the new crime only, but is the heavier if [the defendant] is an habitual criminal." Id. at 312, 21 S.Ct. at 390. The district court applied this reasoning to the use of both the habitual offender and the doubling statutes, concluding that the "[p]etitioner was not given additional punishment on crimes for which he had already been convicted and punished, but was given a heavier sentence on the current convictions because he was both a habitual offender and an inmate at the time he committed the current crimes." Layton v. State, No. 88-4016, slip op. at 7 (D.S.D. May 12, 1989).
 
 
 28
 We see no reason to reject this conclusion. As in the case of habitual offender criminal statutes, Layton's punishment was for the single crime for which he was convicted but was enhanced because of his past behavior and the circumstances in which the crime was committed.
 
 
 29
 C. Finally, Layton contends that the order in which the trial court applied the doubling and habitual offender statutes denied him due process. In its opinion rejecting Layton's challenge to the enhancement of his sentence by applying both statutes, the South Dakota Supreme Court stated: "The trial court correctly first sentenced appellants as inmate felons and secondly as habitual offenders." 337 N.W.2d at 816. Layton argues that by this statement the South Dakota Supreme Court "mandated" that the doubling statute must be applied first and that the South Dakota courts' failure to follow that order "violated his rights to due process and fundamental fairness."
 
 
 30
 The South Dakota Supreme Court may have been confused regarding the order in which the trial court applied the doubling and habitual offender statutes. Like the district court, however, we do not read the South Dakota Supreme Court's opinion as requiring that, in applying the statutes, the doubling statute must be applied first and then the habitual offender statute. As the district court pointed out, the South Dakota Supreme Court affirmed Layton's conviction "and the trial court's application of the statutes...." Layton v. State, No. 88-4016, slip op. at 12 (D.S.D. May 12, 1989).
 
 
 31
 Since the order in which the two sentencing statutes should be applied is a question of State law, any error by the South Dakota Supreme Court in upholding the application of those statutes in sentencing Layton was a matter for that court to correct upon petition for rehearing or reconsideration. In any event, possible error by the South Dakota Supreme Court in upholding the district court's application of those statutes to produce a 30-year sentence on each count would not constitute a denial of due process.
 
 V.
 
 32
 Layton's final argument is that his right to a fair trial guaranteed by the sixth and fourteenth amendments was violated by the trial court's refusal to sever co-defendant Davis for trial.
 
 
 33
 The South Dakota Supreme Court held that joinder was proper, concluding:
 
 
 34
 The charged offenses were part of the same transaction. Considerable factual overlap exists between the charges. The settled record exhibits a systematically concerted sequence of violent events. Therefore, joinder was proper unless appellants were prejudiced thereby.
 
 
 35
 337 N.W.2d at 815. The court concluded that the appellants were not prejudiced by the joinder:
 
 
 36
 Our examination of the voluminous settled record reveals that neither appellant testified nor sought to compel each other to testify. The trial court diligently cautioned and instructed the jury to keep distinct and separate facts and charges against each appellant. Therefore, we are unable to conclude that appellants were prejudiced or that the trial court abused its discretion in denying a severance of the trial below.
 
 
 37
 Id.
 
 
 38
 In a federal habeas proceeding, we are bound by the State court's interpretation of its statutes. Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir.1981). Thus, the issue before us is not whether joinder was in accord with S.D.C.L. 23A-6-24 (South Dakota's joinder statute), but whether the trial court abused its discretion in denying severance and whether the joint trial so prejudiced Layton as to render his trial fundamentally unfair and violative of due process. United States v. Mercer, 853 F.2d 630, 632 (8th Cir.) cert. denied, 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988); Robinson v. Wyrick, 735 F.2d 1091, 1094 (8th Cir.) cert. denied, 469 U.S. 983, 105 S.Ct. 390, 83 L.Ed.2d 324 (1984).
 
 
 39
 To establish abuse of discretion, Layton must show more than antagonistic defenses or that his chances for acquittal would have been better if tried alone. United States v. Boyd, 610 F.2d 521, 526 (8th Cir.1979), cert. denied, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980); United States v. Jackson, 549 F.2d 517, 524 (8th Cir.), cert. denied, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). To prevail, he must also demonstrate that the joint trial prejudiced his right to a fair trial. Jackson, 549 F.2d at 524.
 
 
 40
 In rejecting Layton's claim of improper joinder, the district court stated that Layton
 
 
 41
 has failed to show that he was prejudiced by the joint trial. His argument that the state was allowed to introduce a substantial amount of evidence regarding crimes committed by Dennis is in reality an argument that his chances of acquittal would have been greater if tried alone. The argument is not sufficient.
 
 
 42
 Layton v. State, No. 88-4016, slip op. at 16 (D.S.D. May 12, 1989). We agree.
 
 VI.
 
 43
 In their brief, the State appellees make a lengthy argument that Layton failed properly to raise in his State habeas petition a number of the other constitutional contentions he made in the district court, which the district court rejected and which Layton did not raise in his appeal to us. The appellees urge us to decide those issues and so hold, "since a holding would significantly impede Petitioner's ability to bring the defaulted issues before the federal courts in the future."
 
 
 44
 The only issues Layton raised in his appeal are the four we have discussed. Our role as an appellate court is to decide the challenges that Layton has made to the district court's judgment denying his petition for habeas. For us to decide the additional questions the State tenders to us--questions this appeal does not present--would be to render an advisory opinion, which we cannot do. United States v. Taylor, 544 F.2d 347, 349 (8th Cir.1976). The time to address those issues is if and when Layton files another federal habeas proceeding in which he raises the questions.
 
 
 45
 The judgment of the district court is affirmed.
 
 
 
 *
 DANIEL M. FRIEDMAN, Senior Circuit Judge, of the United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 **
 The Honorable John B. Jones, United States District Judge for the District of South Dakota